JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Defendant Aaron Holland (appellant) appeals his convictions of two counts of gross sexual imposition. After reviewing the facts of the case and pertinent law, we reverse and remand for a new trial.
 I. {¶ 2} C.R., born April 20, 2001, and T.W., born June 18, 2001, both attended daycare at Beverly Holland's (Beverly) house in Euclid, Ohio when the following events allegedly took place.[1] A brief history of the family dynamics follows. Beverly, who is married to appellant, is a licensed daycare provider. Beverly is the paternal grandmother of T.W. and a great-aunt of C.R., thus making appellant the grandfather by marriage of T.W. and the great-uncle by marriage of C.R.
 {¶ 3} On April 28, 2005, Karen Wright (C.R.'s mother) discovered blood in four-year-old C.R.'s underpants and a scratch on C.R.'s right labia. C.R.'s mother asked C.R. what happened, and C.R. replied that T.W., who was three years old at the time, touched her private area. C.R.'s mother began asking C.R. if specific individual adults were also involved in this incident, and C.R. replied yes to appellant's name.
 {¶ 4} The next day, C.R.'s mother called Beverly, who questioned T.W. about the allegations. T.W. replied that she touched C.R.'s private area with a back *Page 3 
scratcher. C.R.'s mother also called Vanessa Knight (T.W.'s mother) to question her regarding the incident. T.W.'s mother questioned T.W., who stated that she and C.R. touched each other's privates. C.R.'s mother took C.R. to the hospital, where staff prepared a rape kit, and the police were notified.
 {¶ 5} On May 2, 2005, Cuyahoga County Department of Children and Family Services social worker Angela Colon (Colon) was assigned to investigate the allegations because the events took place at a daycare. Colon interviewed C.R. and T.W. According to Colon, C.R. told her that appellant touched her private area once, and T.W. told her that appellant kissed her "kitty cat." Also in early May, Euclid police detective Susan Schmid ("Detective Schmid") began investigating this allegation. As part of her investigation, Detective Schmid interviewed C.R., who told her that T.W. touched her private area, and T.W. who told her that C.R. touched her private area. T.W. denied that appellant ever touched her private area, and a careful reading of the transcript shows that there is no testimony as to what C.R. said to Schmid about appellant.
 {¶ 6} On October 5, 2006, appellant was indicted for two counts of kidnapping and two counts of gross sexual imposition. On January 19, 2007, a jury found appellant guilty of two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4). On February 20, 2007, the court sentenced appellant to one year in prison. Subsequently, on March 13, 2007, the court declared appellant a sexual *Page 4 
predator. On April 6, 2007, appellant filed a notice of appeal concerning his convictions and sexual predator classification.
 {¶ 7} In State v. Holland, Cuyahoga App. No. 89667, 2008-Ohio-920, this court affirmed appellant's sexual predator classification; however, this court dismissed the remainder of the appeal as being untimely. On March 11, 2008, this court granted appellant's motion for a delayed appeal and assigned a new case number. We now address appellant's remaining assignments of error. Because we are reversing appellant's convictions, this necessarily requires vacation of his sexual predator classification at the trial court level. Additionally, the instant opinion supercedes State v. Holland, Cuyahoga App. No. 89667,2008-Ohio-920, as to the sexual predator classification.
 II. {¶ 8} In his first assignment of error, appellant argues that "the trial court committed plain error in violation of Crim.R. 52 and Evid.R. 601 when it allowed incompetent minor witnesses to testify in violation of appellant's right to due process ***." Specifically, appellant argues that the court improperly allowed two five-year-old witnesses to testify without conducting a competency hearing.
 {¶ 9} The standard of review for admissibility of evidence is abuse of discretion. See Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296, 587 N.E.2d 290. However, appellant did not object to the testimony under scrutiny in this assignment of error; therefore, it is subject to the plain error rule. "Plain errors or *Page 5 
defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Furthermore, the Ohio Supreme Court has held that the "power afforded to notice plain error, whether on a court's own motion or at the request of counsel, is one which courts exercise only in exceptional circumstances, and exercise cautiously even then." State v. Long (1978), 53 Ohio St.2d 91,94, 372 N.E.2d 804.
 {¶ 10} Evid.R. 601(A) states, in pertinent part, that every witness is presumed competent except "children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 11} In State v. Frazier (1991), 61 Ohio St.3d 247, 250-51, the Ohio Supreme Court held the following regarding the determination of a child witness' competency:
 "It is the duty of the trial judge to conduct a voir dire examination of a child under ten years of age to determine the child's competency to testify. Such determination of competency is within the sound discretion of the trial judge. The trial judge has the opportunity to observe the child's appearance, his or her manner of responding to the questions, general demeanor and any indicia of ability to relate the facts accurately and truthfully. Thus, the responsibility of the trial judge is to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them."
 {¶ 12} The Frazier court also held that the trial court must take into consideration five factors when making this analysis, including "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the *Page 6 
child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful." Id. at 251.
 {¶ 13} While Ohio courts hold that it is the preferred method for a court to conduct a competency hearing before allowing children under the age of ten to take the stand, in rare cases appellate courts have determined that it was not plain error for the trial court to fail to do this. See, e.g., State v. Morgan (1985), 31 Ohio App.3d 152 (holding that the defendant was not prejudiced when the eight-year-old victim, who was seven at the time of the offense, testified after the prosecutor conducted what amounted to a voir dire at the beginning of her testimony). Additionally, in State v. Hendrix (Aug. 26, 1993), Cuyahoga App. No. 63566, we upheld the testimony of three child victims, ages six, seven, and eight, without a competency hearing, finding the following:
 "Although the preferred judicial procedure is to have the trial court conduct a voir dire examination of child witnesses under the age of ten, we do not find that the defendant was prejudiced in this instance and in light of the fact that this case was tried to the bench. In this case, the prosecutor upon direct examination asked the three children questions pertaining to their competency to testify which amounted to a voir dire of their competency to testify. The trial judge also asked questions of the children which pertained to their competency."
 {¶ 14} In the instant case, the court did not conduct competency hearings for two five-year-old witnesses who were ages three and four, respectively, at the time the alleged offenses took place. Rather, the prosecutor began her direct *Page 7 
examination of C.R. and T.W. with the following colloquy, which took place in front of the jury:
 "Q: Hey, [C.R.] You need to sit up a little bit because you have to speak in here. Okay?
 A: Uh-huh.
 Q: All right. Tell me your name.
 A: [C.R.].
 Q: All right. I need you to speak in the mic, though, [C.R.]. Because if you speak in the mic, your mom and your sister will be able to hear you back there. Okay?
 A: Uh-huh.
 Q: Now, tell me your name.
 A: [C.R.].
 Q: A little bit more. Come on. Turn around. Sit up in your chair. Sit up a little bit. You're a big girl, aren't you?
 A: Uh-huh.
 Q: Okay. Speak in the mic. Tell us your name again.
 A: [C.R.].
 Q: And how old are you, [C.R.]?
 A: Five.
 Q: Move your hand from your mouth. See mom back there? Yes?
 A: Uh-huh. *Page 8 
 Q: All right. I need you to say yes or no. I'm going to put your hand down. I'm going to stay right up here next to you. Is that okay?
 THE COURT: The jury can't see through you.
 Q: What's your last name?
 A: [R]."
 {¶ 15} Throughout C.R.'s testimony, the prosecutor consistently prompted her to answer yes or no, rather than mumble or shake or nod her head. C.R. was then able to identify her birth date, age, siblings' and teacher's name. However, she was not able to identify the name of her school, and she answered in the negative when asked if it was a bad thing to tell a lie, then changed her mind after prompting from the prosecutor. C.R.'s contradictory answer to whether she would make up a story was "yes — no." C.R. was also inconsistent when asked if she remembered the names of the people at the daycare with her, she was inconsistent when asked if she liked attending daycare, and she could not recall what kinds of toys were there. In addition, during the middle of the direct examination, C.R. contradicted herself about whether the touching of her private parts was on top of, or underneath, her clothes, about whether appellant said anything after the alleged incident, about whether T.W. ever touched her private parts, about whether she remembered having blood in her underwear, and about whether appellant "scratched" or touched her private parts.
 {¶ 16} For example, the following excerpt is indicative of C.R.'s entire testimony: *Page 9 
 "Q: Okay. Did anyone else touch your private part?
 Yes or no?
 A: No.
 Q: All right. Did [T.W.] ever touch your private part? Say yes or no.
 A: No.
 Q: All right. Did anyone ever touch you with this back scratcher? You're shaking your head yes. You have to say yes or no.
 A: Yes.
 Q: Who touched you with this back scratcher?
 A: [T.W.].
 Q: [T.W.]?
 A: Uh-huh.
 Q: Yes?
 A: Yes.
 Q: Where did she touch you?
 A: On my private parts."
 {¶ 17} Furthermore, during cross-examination, C.R. testified that she did not remember telling the prosecutor, just moments earlier, that T.W. touched her with a back scratcher. However, she answered the next question — "Did [T.W.] ever touch you with a back scratcher?" — in the affirmative.
 {¶ 18} Turning to T.W.'s testimony, the beginning colloquy is as follows: *Page 10 
 "Q: Can you tell me your name?
 A: [T.]
 Q: Wow. What's your last name?
 A: [W.]
 Q: How do you spell your first name?
 A: I don't know.
 Q: You don't know. Okay. How old are you?
 A: Five.
 Q: When is your birthday?
 A: June 18th.
 Q: What year were you born in?
 A: I don't know.
 Q: You don't know. 2001 maybe? But you're five now, right?
 A: Yes.
 Q: When will you be six?
 A: I don't know.
 Q: How about on your birthday? Do you think you'll turn six on June 18th?
 A: Yes.
 Q: All right. What grade are you in?
 A: Kindergarten.
 Q: What's the name of your school?
 A: I don't know.
 Q: You don't know. What's [your] teacher's name?
 A: Mrs. Sowa.
 ***
 Q: Do you know the difference between telling the truth and a story or a lie?
 A: I don't know.
 Q: Do you know what it means to tell the truth?
 A: No.
 Q: No? Is it a good thing to tell the truth?
 A: Yes.
 Q: All right. Is it a bad thing to tell a lie?
 A: No.
 Q: No? Do you think people should tell lies?
 A: No.
 Q: All right. You wouldn't lie to your mommy or anyone if they asked you something, would you? *Page 11 
 A: No.
 Q: Why not?
 A: I don't know."
 {¶ 19} During the course of her testimony, T.W. did not know where she lived or the name of her street, she did not remember talking to the social worker about this case, she was inconsistent in identifying her body parts, and she did not recall anyone talking about her private parts. She testified that C.R. touched her private parts with her hand, and not the back scratcher; appellant never touched her; she did not see appellant touch C.R.; and she did not tell anyone that someone touched her private parts. She also did not recall having a conversation with her grandmother about touching C.R.'s private parts.
 {¶ 20} In applying the above testimony to Frazier's five-pronged test for competency of child witnesses, we find the following facts should have been taken into consideration by the trial court. C.R.'s testimony shows that it is unclear whether she was able to accurately observe the circumstances surrounding these allegations. Her ability to recollect is questionable because of the inconsistency of her answers. Additionally, she was able to communicate only after much prompting from the prosecutor about speaking into the microphone, sitting upright, and articulating answers. Her understanding of truth and falsity was also brought into question, again due to inconsistencies in her answers and continuous prompting from the prosecutor. *Page 12 
 {¶ 21} T.W.'s testimony is riddled with clear instances of her failing the court-mandated competency test. Most importantly, she did not recall most of what happened, and she admitted to not knowing the difference between the truth and a lie.
 {¶ 22} While we are aware that noticing plain error is a high hurdle to leap, we find that in the instant case, the court's failure to conduct competency hearings or in the alternative voir dire examinations for C.R. and T.W., and thus its failure to determine their competency on the record, amounts to plain error. The testimony of two statutorily incompetent five-year-old girls is prejudicial to appellant because the emotional impact a child witness may have on a jury is unquantifiable. This is painfully apparent because T.W. testified that appellant never touched her, yet a jury found him guilty of doing just that. Furthermore, if a child is declared incompetent to testify under Evid.R. 601, the child's statements made to another are inadmissible as exceptions to hearsay under Evid.R. 807. In other words, it would also be error to admit C.R.'s and T.W.'s mothers' testimonies regarding what the two girls allegedly said if the two girls were incompetent at the time the statements were made. T.W. was three years old when the accusations were made, and C.R. had turned four years old a week prior to the day in question. If T.W. testified at age five that she did not understand the difference between the truth and a lie, it is not unreasonable to assume she would not have understood two years prior, when she was age three. See In re Shamblin (Sept. 8, 1998), Ross App. Nos. 97CA2347 and 98CA2400 *Page 13 
(holding that a trial court must find a witness under the age of ten was competent when he or she made a statement regarding sexual abuse to admit that statement as an exception to hearsay under Evid.R. 807);State v. Said (1994), 71 Ohio St.3d 473.
 {¶ 23} We also note that the Ohio Supreme Court in State v.Wilson (1952), 156 Ohio St. 525, 532-33, held the following: "It is the duty of the court to conduct such an examination. The child's appearance, fear or composure, general demeanor and manner of answering, and any indication of coaching or instruction as to answers to be given are as significant as the words used in answering ***." (Emphasis in original.)
 {¶ 24} In conclusion, we hold that children under ten years of age who appear incapable of receiving just impressions of facts and transactions are presumed incompetent, and in such cases it is the duty of the trial court to conduct a competency hearing. We feel that this was not adequately done in the instant case, and that a new trial is warranted to include a competency hearing pursuant to Evid.R. 601. Appellant's first assignment of error is sustained.
 {¶ 25} Additionally, we vacate appellant's sexual predator classification. Pursuant to App.R. 12(A)(1)(c), appellant's remaining assignments of error are made moot by our disposition of his first assignment of error.
 {¶ 26} Judgment reversed and case remanded for a new trial consistent with the mandates in this opinion. *Page 14 
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY; SEAN C. GALLAGHER, P.J., DISSENTS WITH SEPARATE OPINION
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases.