[Cite as *State v. Pridgett*, 2016-Ohio-687.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 101823

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ERIC A. PRIDGETT

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-578755-A

**BEFORE:**   Laster Mays, J., Keough, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:**   February 25, 2016

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
700 W. St. Clair Avenue, Suite 212
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy McGinty
Cuyahoga County Prosecutor

By:    Jeffrey S. Schnatter
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Eric Pridgett ("Pridgett") was found guilty of nine counts of rape in violation of R.C. 2907.02(A)(1)(b) and 2907.02(A)(2), first- degree felonies; eight counts of kidnapping in violation of R.C. 2905.01(A)(4), first-degree felonies; and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), third-degree felonies.[1] The jury found that Pridgett was a sexually violent predator as to all of the above-mentioned counts. The trial court indicated that Pridgett was a Tier III sex offender/child victim offender registrant. The trial court imposed a prison sentence of 70 years to life.

{¶2} After a review of the record, the trial court's decision is affirmed. Pridgett assigns six errors for our review:

> I.     The trial court erred when it found the child to be competent to testify.
>
> II.   The state failed to present sufficient evidence to sustain a conviction against appellant.
>
> III.    Appellant's convictions are against the manifest weight of the evidence.
>
> IV.    The trial court erred when it admitted other acts testimony in violation of R.C. 2945.59, Evid.R. 404(B), and the appellant's rights under

---

[1] Pridgett was charged with 25 counts; 14 counts of rape, eight counts of kidnapping, two counts of gross sexual imposition, and one count of disseminating matter harmful to juveniles. He was found not guilty of five counts of rape and the one count of disseminating matter harmful to juveniles.

Article I, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

V.   Appellant was denied effective assistance of counsel as guaranteed by Article I, Section 10, of the Ohio Constitution and the Sixth and Fourteenth Amendments of the U.S. Constitution.

VI.   Appellant was denied a fair trial due to prosecutorial misconduct by the assistant prosecutor.

## I.   Facts and Procedural Posture

{¶3} Pridgett was accused and charged with raping both his granddaughter ("E.P.") and adopted daughter ("D.R."), E.P.'s mother.   Because E.P. was younger than ten years old, the trial court conducted a competency hearing prior to the start of the trial.   The prosecutor asked E.P. a series of questions to determine if E.P. knew the difference between a truth and a lie.   Specifically the trial transcript, page 7 states:

PROSECUTOR:   Hey, do you know the difference between something that is true and something that is a lie? If I told you my coat is bright green, would I be telling you the truth or a lie?

E.P.:   A lie.

PROSECUTOR:   If I told you your chair is bright green, would I be telling you the truth or a lie? Your chair.

E.P.:   A lie.

PROSECUTOR:   What color is it?

E.P.:   Green.

PROSECUTOR:   If I told you it was green, would that be the truth or a lie?

E.P.:   The truth.

The prosecutor continues to ask E.P. different questions about her bedroom, including the color, layout, and items in the bedroom. E.P. was able to answer all of these questions correctly. Against the objection of Pridgett's trial attorney, the trial judge found E.P. competent to testify. The judge stated:

> So that the record is accurate, you are correct, [defense counsel], she did fumble, played around with if you will, with the microphone that's on the jury stand. And to be fair as well, certainly at the beginning of her questions, I guess I will, for lack of a better way to say it, it took her a while to warm up; however, once she did so, she was able to accurately recall, without any prompts, colors of what the walls were in her grandfather's house, what color her bed was, that she had lots of toys and dresses in there. She did have the ability to recall what Mr. Schnatter's first name was. She spoke about a pink castle, spoke about the hook on the door. She did indicate that she needed to tell the truth, and it's bad to tell a lie. And for those reasons and following the court's ruling in State versus Frazier, I do find that she is competent to testify and we will be going forward. Tr. 14.

{¶4} Once the trial began, E.P. was the state's first witness. She testified that Pridgett did "bad stuff" to her. She said that Pridgett came into her room and took off his clothes. When she was asked if anyone touched her while she was sleeping, she indicated that Pridgett did. E.P. was given an anatomically correct doll and she showed the jury how Pridgett touched her pointing to the vaginal area of the doll. She also testified that Pridgett touched her buttocks. E.P. testified that Pridgett did this more than once and that she told her mother.

{¶5} After E.P. testified, D.R., Pridgett's daughter testified that Pridgett started touching her inappropriately when she was in kindergarten. She recalled several instances when he touched her buttocks and vaginal area. D.R. testified that in addition to touching her, Pridgett began performing oral sex on her when she was six years old.

This continued until she turned 11 years old, when Pridgett progressed to digitally penetrating her. Once D.R. turned 13, Pridgett began having vaginal intercourse with her on a regular basis and made her perform oral sex on him. D.R. described the last time that Pridgett touched her was when she was 16 years old and pregnant with E.P. Pridgett pushed D.R. on to a bed in the basement of his home and penetrated her. He told her that it felt "good and different" because she was pregnant, "so it was easier for him to fully penetrate her." Tr. 326.

{¶6} Initially D.R. did not disclose to anyone about Pridgett's actions. However, she did tell her friend when she was in elementary school. Her friend wrote down what D.R. told her in a note, which was later found by the school's janitor, who gave the note to the school's principal. As a result, an investigation began, and Pridgett and his wife were notified. At this time, Pridgett's wife threatened D.R., telling her that she was going to get sent away and go to hell for talking about what Pridgett did to her. D.R. then met with a detective and disclosed the molestation to the detective. As a result, Pridgett's wife severely punished her. Afterwards, D.R. recanted her story to the detective.

{¶7} D.R. did not disclose the abuse again to the authorities until her daughter, E.P. told her that Pridgett was touching her vaginal area. D.R. alerted the authorities and E.P. was interviewed by a detective and social worker. E.P. described in vivid detail how Pridgett touched her using anatomically correct dolls, illustrating exactly where Pridgett touched her. E.P. also described what Pridgett looked like naked, specifically

whether or not he had hair in his pubic region and how his body differed from the anatomically correct adult male doll.

{¶8} The state then called Pridgett's niece ("L.L.") to testify. She testified that she lived with Pridgett for a period of time, and during that time Pridgett made her uncomfortable. She said that Pridgett made a statement to her about having large breasts and large buttocks as a result of her being pregnant. This conversation made her uneasy, so she moved out of his home. She stated that she was afraid if she stayed, he would touch her.

{¶9} Pridgett testified for the defense. He denied all sexual allegations. Pridgett testified that he had to touch E.P. to administer medication on her buttocks and vagina. When asked if he ever inserted his finger into her vagina, he said he may have, but did not know because he has bad vision.

{¶10} At the conclusion of the trial, during his closing argument, the prosecutor asked the jury if they ever heard the term "red herring." He then explained what the term meant stating:

> When you listen to [defense counsel], I will ask one thing, if you ever heard the term red herring. Some of you may. Some of you may not. Red herring, this term, it comes from actually the training of hounds for hunting and tracking, this term. Because when they would train hounds, they would actually have them follow this red herring, which is pungent fish. It smells really bad. They will train it, follow it, and they would stop that and will train to follow what they really wanted it to track or follow blood or wild game. They would take that fish again and drag it across the path of what they wanted that hound to really follow to see if he would take the hound off the true path, as a red herring. It's a distraction, something that's not relevant. It's something that's not important. I would suggest to you when you are listening to what [defense counsel] has to say, that you

be careful of the red herring. And I will suggest to you that in this case, you will hear a lot of them from him.

At the conclusion of the trial, the jury found Pridgett guilty on 19 of the 25 counts charged in the indictment. As a result, Pridgett filed this timely appeal.

## II.    Competency to Testify

{¶11} In his first assignment of error, Pridgett argues that the court erred when it found the child to be competent to testify. An "appellate court reviews a trial court's competency determination under an abuse of discretion standard; absent an abuse of discretion, competency determinations of the trial judge will not be disturbed on appeal." *State v. Grahek*, 8th Dist. Cuyahoga No. 81443, 2003-Ohio-2650, ¶ 22. "An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

> It is the duty of a trial judge to conduct a voir dire examination of a child under 10 years of age to determine the child's competency to testify. Such determination of competency is within the sound discretion of the trial judge. The trial judge has the opportunity to observe the child's appearance, his or her manner of responding to the questions, general demeanor and any indicia of ability to relate the facts accurately and truthfully. Thus, the responsibility of the trial judge is to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them. A trial court must take into consideration five factors when making this analysis, including: (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify; (2) the child's ability to recollect those impressions or observations; (3) the child's ability to communicate what was observed; (4) the child's understanding of truth and falsity; and (5) the child's appreciation of his or her responsibility to be truthful. *State v. Holland*, 8th Dist. Cuyahoga No. 91249, 2008-Ohio-3450, ¶ 11, citing *State v. Frazier*, 61 Ohio St.3d 247, 250-51, 574 N.E.2d 483 (1991).

{¶12} While Ohio courts hold that it is the preferred method for a court to conduct a competency hearing before allowing children under ten years of age to take the stand, in rare cases appellate courts have determined that it was not an abuse of discretion for the trial court to fail to do this. *See*, *e.g.*, *State v. Morgan*, 31 Ohio App.3d 152, 509 N.E.2d 428 (1st Dist.1986) (holding that the defendant was not prejudiced when the eight-year-old victim, who was seven years old at the time of the offense, testified after the prosecutor conducted what amounted to a voir dire at the beginning of her testimony). In this case, E.P. testified after the prosecutor and judge conducted what amounted to a voir dire of her competency at the beginning of her testimony.

{¶13} In applying E.P.'s testimony to the factors, she was able to testify with great detail and clarity about how Pridgett touched her, using anatomically correct dolls. She was able to receive those impressions of fact and recollect them. She testified as to the difference between the truth and a lie, giving examples of both. She also testified that it was bad to lie, and that she was not allowed to lie thus, appreciating her responsibility to be truthful. She was able to give a detailed description of her room, the items contained in the room, and even the lock on the door of her bedroom. E.P. was able to communicate and relate her understanding of the truth and falsity. Therefore, the trial court correctly determined that E.P. was competent to testify at trial. Pridgett's first assignment of error is overruled.

## III. Sufficiency of Evidence

{¶14} When an appellate court reviews a claim of insufficient evidence, "the

relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

{¶15} Pridgett reasons that the state failed to present sufficient evidence to sustain a conviction against him. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶16} Pridgett was convicted of rape in violation of R.C. 2907.02(A)(1)(b) and 2907.02(A)(2); kidnapping in violation of R.C. 2905.01(A)(4); and gross sexual imposition in violation of R.C. 2907.05(A)(4). The statutes read as follows:

> No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

R.C. 2907.02(A)(1)(b).

> No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

R.C. 2907.02(A)(2).

> No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.

R.C. 2905.01(A)(4).

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

R.C. 2907.05(A)(4).

{¶17} Both E.P. and D.R. testified that Pridgett had sexual conduct with them. E.P., a five-year-old, used anatomically correct dolls to show the social worker and doctor how Pridgett touched her on her vagina and buttocks. She also testified that Pridgett inserted his finger into her vagina. In addition, E.P. testified that Pridgett locked the door to her room when he would come to touch her. She testified that Pridgett did this more than once.

{¶18} D.R. testified that Pridgett began touching her vagina and buttocks when she was five and having sexual intercourse with her when she was 13 years old. Pridgett

repeatedly touched D.R.'s nipples and made her perform oral sex on him. Pridgett also forced D.R. onto a bed in the basement of their home, when she was 16 years old, where he forced her to have sexual contact with him. The evidence admitted at trial would convince the average mind of the defendant's guilt beyond a reasonable doubt. The second assignment of error is overruled.

## IV.    Manifest Weight of Evidence

{¶19} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether,

> [T]here is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

(Internal citations and quotations omitted.) *Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229.

{¶20} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541.

> Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. *Id.*

Weight is not a question of mathematics, but depends on its effect in inducing belief. *Black's Law Dictionary* 1433 (6th Ed.1990).

{¶21} Pridgett contends that his convictions are against the manifest weight of the evidence. "A manifest weight challenge questions whether the state met its burden of persuasion at trial." *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. Although an appellate court reviews credibility when considering the manifest weight of the evidence, the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

{¶22} Pridgett argues that because there was not any physical evidence to substantiate the claims made by E.P. and D.R., the jury should not have convicted him. However, "a physical injury is not a condition precedent to a conviction for rape; not all rape victims exhibit signs of physical injury." *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46. The jury listened to all of the testimony. They were able to observe the witnesses' demeanor, gestures and voice inflections and used these observations in weighing the credibility of E.P., D.R., and L.L. In looking at the record and all the evidence presented, we determine that the state met its burden of persuasion at

trial.    Pridgett's third assignment of error is overruled.

**V.    Prior Bad Acts Testimony**

**{¶23}** Pridgett claims that the trial court committed plain error when it admitted

testimony relating to prior bad acts, in violation of R.C. 2945.59 and Evid.R. 404(B).

R.C. 2945.59 states:

> [i]n any criminal case in which the defendant's motive or intent, the absence
> of mistake or accident on his part, or the defendant's scheme, plan, or
> system in doing an act is material, any acts of the defendant which tend to
> show his motive or intent, the absence of mistake or accident on his part, or
> the defendant's scheme, plan, or system in doing the act in question may be
> proved, whether they are contemporaneous with or prior or subsequent
> thereto, notwithstanding that such proof may show or tend to show the
> commission of another crime by the defendant.

While, Evid.R. 404(B) states:

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the
> character of a person in order to show action in conformity therewith. It
> may, however, be admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity, or absence of
> mistake or accident. In criminal cases, the proponent of evidence to be
> offered under this rule shall provide reasonable notice in advance of trial, or
> during trial if the court excuses pretrial notice on good cause shown, of the
> general nature of any such evidence it intends to introduce at trial.

**{¶24}** Pridgett further contends that the admittance of the prior bad acts testimony

by L.L. violated his rights under Article I, Section 10, of the Ohio Constitution and the

Fourteenth Amendment to the United States Constitution because it prejudiced his right to

a fair trial.

> Due process affords appellant the right to a fair trial before an impartial
> tribunal.  ("The Fourteenth Amendment is a protection against criminal
> trials in state courts conducted in such a manner as amounts to a disregard
> of 'that fundamental fairness essential to the very concept of justice,' and in

a way that 'necessarily prevents a fair trial'.")

*Columbus v. LaMarca*, 10th Dist. Franklin No. 15AP-440, 2015-Ohio-4467, ¶ 55. "The accused, therefore, has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error." *State v. Jones*, 2015-Ohio-2151, 35 N.E.3d 934, ¶ 58 (8th Dist.).

**{¶25}** Under Crim.R. 52(B), plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. Because there was no objection made during trial, we must review for plain error. "However, plain error only occurs when, but for the error, the outcome of the trial clearly would have been different. Notice of plain error should be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Solon v. Woods*, 8th Dist. Cuyahoga No. 100916, 2014-Ohio-5425, ¶ 11. *See also State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240 (holding that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court). By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial.

**{¶26}** First, there must be an error, i.e., a deviation from a legal rule. *State v. Hill*, 92 Ohio St.3d 191, 200, 749 N.E.2d 274, 283 (2001) (observing that the "first condition to be met in noticing plain error is that there must be error"), citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (interpreting Crim.R. 52(B)'s identical federal counterpart, Fed.R.Crim.P. 52[b]).

**{¶27}** Second, the error must be plain. To be "plain" within the meaning of

Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. *State v. Sanders*, 92 Ohio St.3d 245, 257, 750 N.E.2d 90 (2001), citing *State v. Keith*, 79 Ohio St.3d 514, 518, 684 N.E.2d 47 (1997); *see also Olano* at 734 (a plain error under Fed.R.Crim.P. 52[b] is "'clear' or, equivalently, 'obvious'" under current law).

**{¶28}** Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. *See, e.g.*, *Hill* at 205; *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

**{¶29}** In analyzing L.L.'s testimony using the three-prong test set forth in *Barnes*, we must first determine if there was a deviation from Evid.R. 404(B). L.L. testified that she was not getting along with her mother. As a result, the Pridgetts offered their home to her. After being taken into the Pridgett home, Pridgett made inappropriate comments about her body. Specifically, L.L. testified that Pridgett made comments about her big breasts and buttocks as a result of her being pregnant. Taken together with the testimony from D.R. about how Pridgett had sex with her during her pregnancy and his comments about how he liked pregnant sex better, L.L.'s testimony is evidence of Pridgett's intent, preparation, and motivation for opening his home. This testimony was not used as character evidence, which Pridgett is arguing. Therefore, this testimony was not a deviation from Evid.R. 404(B).

**{¶30}** L.L.'s testimony did not show an obvious defect in the trial proceedings. Her testimony was simply to show opportunity and intent. The comments he made to her and the way he spoke, aimed at proving the existence of his scheme or plan. The third and final prong was if her testimony affected Pridgett's substantial rights or if the error in her testimony kept Pridgett from receiving a fair trial. We find it did not. Section 2505.02(A)(1) defines a "[s]ubstantial right" as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." *Binns v. Sterling Jewelers, Inc.*, 9th Dist. Summit No. 24522, 2009-Ohio-3359. Pridgett has a substantial right to a fair trial, however L.L.'s testimony did not affect that right when also considering E.P. and D.R.'s testimony.

**{¶31}** In determining whether to permit other-acts evidence to be admitted, trial courts should conduct the three-step analysis set forth in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278: (1) determine if the other-acts evidence "is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence" under Evid.R. 401; (2) determine if the other-acts evidence "is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other-acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)"; and (3) consider "whether the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.* at ¶ 20.

{¶32} Pridgett contends that by having L.L. testify to his words about big breasts and buttocks, it prejudiced his right to a fair and just trial. Using the three-step analysis in *Williams*, we determine that Pridgett's comments were relevant to show that Pridgett had the opportunity and intent to be inappropriate with underaged girls. It demonstrates his preparation and motive. This testimony provides the jury a complete illustration such that its probative value substantially outweighs its potential prejudice.

{¶33} Since L.L.'s testimony was not an error, and it did not effect Pridgett's substantial rights or his right to a fair trial guaranteed by the Article I, Section 10 of the Ohio Constitution and the Fourteenth Amendment of the United States Constitution. Therefore the trial court did not commit plain error in admitting L.L.'s testimony into evidence. Pridgett's fourth assignment of error is overruled.

## VI.    Ineffective Assistance of Counsel

{¶34} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that:  (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999).

**{¶35}** Pridgett argues that his trial counsel's performance was so deficient that it deprived him of his right to counsel and but for his counsel's performance, the results of the trial would have been different. As a result, he claims that counsel's ineffectiveness deprived him of his rights under Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United States Constitution.

**{¶36}** "'Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers.'" *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 6, quoting *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18; *see also State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101 ("debatable trial tactics" do not constitute ineffective assistance of counsel). A reviewing court, therefore, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland* at 689; *State v. May*, 8th Dist. Cuyahoga No. 102482, 2015-Ohio-4275.

**{¶37}** Specifically, Pridgett contends that E.P. and D.R. should not have been heard at the same trial because his trial counsel should have filed a motion to sever the charges. He claims that he was significantly prejudiced by the both of the victims testifying at his trial. Crim.R. 8(A) states,

> two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

Crim.R. 14 states,

> if it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires.

**{¶38}** "The law favors joining multiple offenses in a single trial if the requisites of Crim.R. 8(A) are fulfilled. If it appears, however, that the defendant would be prejudiced by the joinder, a trial court may grant a severance under Crim.R. 14." *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 38. "A defendant is not prejudiced by joinder where the joined offenses are simple and direct, so that a jury is capable of segregating the proof required for each offense." *Id*. at ¶ 39.

> In deciding a claim of ineffective assistance of counsel, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. That is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Trial strategy, including debatable trial tactics, does not constitute ineffective assistance of counsel. Indeed, the decision to file a motion for separate trials or to proceed with the joinder of the offenses may be a matter of counsel's trial strategy.

*Id.* at ¶ 40. It is reasonable to presume that counsel's decision to not file a motion to sever the offenses was simply a matter of trial strategy. After review of the record, we are not convinced that Pridgett's trial counsel erred in not filing a motion to sever because the offenses in this case are of the same or similar character. Moreover, Pridgett did not demonstrate that he was prejudiced by counsel's decision, and has not shown that he was denied effective assistance of counsel in violation of his rights guaranteed to him by Article I, Section 10, of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United States Constitution. Pridgett's fifth assignment of error is overruled.

## VII. Prosecutorial Misconduct

**{¶39}** In his final assignment of error, Pridgett argues that statements made by the prosecutors during closing argument amounted to prosecutorial misconduct. "A

prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial." *State v. Robinson*, 8th Dist. Cuyahoga No. 90731, 2008-Ohio-5580, ¶ 65; *State v. York*, 8th Dist. Cuyahoga No. 87814, 2006-Ohio-6934; *State v. Keenan*, 66 Ohio St.3d 402-405, 613 N.E.2d 203 (1993); *State v. Gest*, 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995). "The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "The effect of the prosecutor's misconduct must be considered in light of the whole trial." *Id.*, citing *State v. Durr*, 58 Ohio St.3d 86, 94, 568 N.E.2d 674 (1991). "Furthermore, a prosecutor is afforded wide latitude during closing argument, and it is within the trial court's sound discretion to determine whether a comment has gone too far." *Id.*, citing *State v. Benge*, 75 Ohio St.3d 136, 661 N.E.2d 1019 (1996).

**{¶40}** Isolated comments by a prosecutor are not to be taken out of context and be given their most damaging meaning. *State v. Hernandez*, 8th Dist. Cuyahoga No. 90581, 2008-Ohio-5871, citing *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996). Pridgett contends that the state referring to "red herrings" multiple times and stating that the defense is "throwing up smokescreens" to try and confuse the jury is prosecutorial misconduct.

> The test for prosecutorial misconduct is whether the prosecutor's remarks or questions were improper, and if so, whether they prejudicially affected substantial rights of the accused. The focus of that inquiry is on the fairness of the trial, not on the culpability of the prosecutor. Given the

myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error free, perfect trial, and the constitution does not guarantee such a trial. The focus upon review is whether the prosecutor's comments violated Pridgett's substantial rights, thereby depriving appellant of a fair trial such that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. However, alleged instances of prosecutorial misconduct that were not objected to below are forfeited but for plain error.

(Citation omitted.) *State v. Marshall*, 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511, ¶ 68.

**{¶41}** The prosecutor's comments about the defense trying to shift the focus away from the allegations to the issues of the witnesses do not classify as prosecutorial misconduct. The prosecutor's remarks were not improper and did not violate Pridgett's rights to a fair trial. The prosecutor was trying to convey to the jury that the defense wanted the trial to be about the lifestyle decisions and past issues of the witnesses to try and discredit them. In light of this, the statements made by the prosecutors did not amount to prosecutorial misconduct. Pridgett's sixth assignment of error is overruled.

**{¶42}** For the reasons stated in this opinion, we affirm the convictions of Pridgett.

It is ordered that the appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute mandate pursuant to Rule 27 of the

Rule of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY J. BOYLE, J., CONCUR