[Cite as *State v. Phillips*, 2017-Ohio-1284.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104806**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CACHET M. PHILLIPS

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588041-A

**BEFORE:** Keough, A.J., E.T. Gallagher, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** April 6, 2017

**ATTORNEY FOR APPELLANT**

Stephanie B. Scalise
Scalise Legal Services, L.L.C.
1360 East Ninth Street, #910
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Ashley B. Kilbane
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, A.J.:

**{¶1}** Defendant-appellant, Cachet M. Phillips ("Phillips"), appeals from her conviction for felonious assault. She contends that (1) the trial court erred in admitting hearsay evidence at trial, (2) her trial counsel was ineffective, and (3) her convictions are against the manifest weight of the evidence. Finding no merit to the appeal, we affirm.

## I. Procedural History and Facts

**{¶2}** Phillips was indicted on five counts of felonious assault in violation of R.C. 2903.11(A)(2), *i.e.*, knowingly causing or attempting to cause physical harm to the named victim by means of a deadly weapon, to wit, a motor vehicle. She pleaded not guilty, and the case proceeded to a jury trial.

## A. The State's Case

**{¶3}** Shayla Williams ("Williams") testified at trial that at approximately 11:30 p.m. on August 2, 2014, she drove her sister Destiny Roberson and three of her sister's friends — Charnae Simpson, Shariae Simpson, and Diamond Wilson — to the Stumble Inn, a bar located on West 25th Street in Cleveland.

**{¶4}** At approximately 2 a.m., Williams saw Phillips and several other women fighting with her sister and her sister's friends in the parking lot of the Stumble Inn. Security guards broke up the fight, and Williams, her sister, and her sister's friends got in Williams's car, a blue Alero. Williams saw Phillips, who was driving a silver Optima, turn right out of the parking lot, so Williams turned left onto West 25th Street to avoid going in the same direction as Phillips and her friends.

{¶5} As Williams approached the Lorain Carnegie bridge, however, she heard honking and yelling, and saw that the silver Optima, driven by Phillips, was directly behind her. Williams said the Optima stayed behind her, and the honking and yelling continued, as she drove across the bridge. Williams testified that the women in the Optima were "all fired up," and everyone in her car was "fired up," but she told the occupants of her car that she was not going to stop for a fight.

{¶6} Williams said that the silver Optima followed her when she turned right onto Carnegie Avenue. At a red light at Ontario Street, Williams pulled her car into the middle lane. According to Williams, the silver Optima stopped a little behind her car in the right turn lane. Williams said there were no cars in front of either car.

{¶7} Williams testified that one of the women in the Optima then got out of the car and yelled, "West 28th, bitch, get out of the car." Williams said that when her sister's friend Charnae, who had been yelling back, dropped her cigarette out of the window and opened the car door to retrieve it, the woman got back in the Optima.

{¶8} According to Williams, when the light turned green, her head hit the steering wheel, and "all our bodies just flew up." Concluding that Phillips had hit her car, Williams got out of the Alero and walked back to the Optima to exchange insurance information. Williams said that the Optima's front bumper was stuck under the right bumper of her car. Williams testified that when she saw Phillips put her car in reverse in order to drive away, she ran to the back of the Optima and ripped the license plate from the car. After about five minutes, Phillips got her car loose and drove away.

{¶9} Williams said that she pulled her car over to the side of the road and called 911. The police did not arrive for nearly an hour and a-half, and Williams called 911 again several more times asking for help. Williams testified that in the meantime, a stranger stopped and asked if they needed a jump. Williams said that as he was helping them, she saw the silver Optima, driven by Phillips and filled with more women than before, drive past her car. Williams said that the Optima drove by, turned around, drove by again, and then parked a little down the street. At that moment, the police finally arrived on the scene, and the Optima drove away.

{¶10} Williams testified that when the officer approached her car, she told him that the woman driving the Optima had just hit her. After the officer stopped the Optima, he returned to Williams's car, and Williams gave him the license plate she had pulled from the Optima. Williams said that she later identified Phillips, who by then was sitting in the backseat of the police cruiser, as the woman who had hit her car earlier that evening.

{¶11} Finally, Williams testified that in February 2015, as she was shopping at a Walmart store, Phillips walked by with a friend, noticed her, and told her friend, "That's the bitch that car – something I hit."

{¶12} Myrtis Duncan ("Duncan") testified that he was at the Stumble Inn and observed the fight in the parking lot around 2 a.m. on August 3, 2014. As he was driving home on Carnegie Avenue, he saw two cars pass him, both traveling at a high rate of speed. Duncan said that one of the cars was silver-colored and nearly clipped his car as it cut in front of him.

{¶13} A short time later, Duncan saw the same silver car "lodged" at an angle under the back bumper of another car. Duncan said that the silver car was trying to back up and he saw the driver of the car it was lodged under get out and pull the license plate off the silver car. He said that when the cars came apart, he could "hear the plastic snap real hard," and he then saw the silver car drive away.

{¶14} Duncan testified that he pulled over and offered to help jump the damaged car. He said that it took nearly an hour and a-half to start the car. Just as he got the car started, he saw the silver car he had seen earlier drive by, and he heard yelling about the "28th Projects" coming from the car. Duncan said that the women he was helping appeared frightened when the silver car drove by but the police then arrived on the scene.

{¶15} Cleveland police officer John Douglas testified that when he responded to the scene, he saw a woman standing outside a car that had damage to its rear end. As Douglas was interviewing Williams, she told him that the silver Optima that had just driven by was the car that had hit her earlier that evening. Douglas said that he made a traffic stop of the Optima and then called for back-up.

{¶16} Douglas testified that Phillips denied being in an accident earlier that evening and told him that the damage to her car had occurred months earlier. Douglas testified, however, that in light of his 15 years of experience and his involvement with many automobile accidents, it was apparent that the damage he observed to the hood and side of Phillips's car was "fresh damage." On rebuttal, Douglas said that he asked Phillips at least seven times if she had been in an accident earlier that evening. He said

that she denied being in an accident, and never mentioned that she had been jumped or ambushed by the women in the Alero.

{¶17} Douglas said that when he went back to talk to Williams, she gave him the license plate she had removed from Phillips's car. Douglas ran the plate and confirmed that it belonged to the car Phillips was driving. When he showed Phillips the license plate, Phillips finally admitted that she had been in an accident earlier that evening. Douglas then arrested Phillips.

B. The Defense Case

{¶18} The defense witnesses gave a different version of what happened in the early morning hours of August 3, 2014. Kierra Scott ("Scott") testified that she and her friend Margaret were with Phillips at the Stumble Inn on August 3, 2014, and they got into a fight at the bar. She said that when they left the bar in Phillips's car, three cars followed them: a red Rendezvous, an Alero, and a Chrysler.

{¶19} Scott testified that the three cars "blocked them in" at the red light: the Alero in front of them, the Rendezvous to their side, and the Chrysler behind them. Scott said that a woman got out of the Rendezvous and tried to pull Margaret out the window of Phillips's car. Scott testified that when she got out of Phillips's car to tell the woman the fight was over, Phillips hit the Alero as she was trying to get away. Scott denied that Phillips's car got stuck under the Alero. She also denied that there was any damage to Phillips's car, and said that Phillips just "bumped" the Alero when she hit it.

{¶20} Scott testified that she then got back in Phillips's car and Phillips took her home, where she changed her clothes. She said that when Phillips picked her up again later, Margaret and two other women were also in the car. Scott said that they were all on their way to Phillips's house when the police pulled them over.

{¶21} Defendant Phillips testified that when she left the Stumble Inn with her friends, the Alero was in front of her and a red Rendezvous followed her. Phillips said that at the red light, she pulled up next to the Rendezvous and asked the occupants why they were following her. Phillips said a woman got out of the Alero, came over to her car, and tried to pull Margaret out of the car.

{¶22} Phillips said that when Scott got out of her car, the woman from the Alero stood in front of her car and said she only wanted to fight "the girl with the red hair." According to Phillips, everyone then got out of the Alero and started running toward her car. Phillips said that in trying to get away but avoid hitting the woman standing in front of her car, she backed up and pulled forward, and then hit the Alero because she did not judge the distance correctly. Phillips denied that her car got stuck under the Alero or that her car was damaged when she hit the Alero.

{¶23} Phillips said that Scott then got in her car and they drove away. Phillips said she later drove back to the scene to look for her license plate after she realized it was missing. Phillips testified that she told the police she was not in an accident that evening because she was not in an accident: she was "ambushed."

**{¶24}** The trial court denied Phillips's Crim.R. 29(A) motions for acquittal, and the jury found her guilty of all counts. This appeal followed.

## II. Law and Analysis

### A. Admission by Party Opponent

**{¶25}** In her first assignment of error, Phillips contends that the trial court erred in allowing inadmissible hearsay into evidence. Specifically, citing Evid.R. 804(B)(3), she asserts that Williams's testimony that she overheard Phillips tell her friend at Walmart that she hit Williams's car was improperly admitted as a statement against interest.

**{¶26}** We review the admission of evidence under an abuse of discretion standard. *State v. Caldwell*, 8th Dist. Cuyahoga No. 99166, 2013-Ohio-5017, ¶ 28, citing *State v. Mauer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). Abuse of discretion implies that the court's attitude was unreasonable, arbitrary, and unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶27}** Evid.R. 804(B)(3) concerns statements against interest and provides that statements against a declarant's interest are not excluded by the hearsay rule if (1) the declarant is unavailable to testify; (2) the statement when made tended to subject the declarant to civil or criminal liability; and (3) corroborating circumstances indicate the trustworthiness of the statement. Phillips asserts that Williams's testimony was improperly admitted under this rule because (1) she was available to testify; (2) the statement was so general that it did not subject her to liability for felonious assault; and

(3) the trial court did not specify what corroborating circumstances made the statement trustworthy.

**{¶28}** Phillips's argument ignores Evid.R. 801(D)(2)(a), however, which provides that a statement constituting an admission by a party-opponent is not hearsay if it "is offered against a party and is * * * the party's own statement, in either an individual or a representative capacity."

**{¶29}** The First District Court of Appeals addressed the distinction between Evid.R. 801(D)(2) and 804(B)(3) in *State v. Webster*, 1st Dist. Hamilton No. C-120452, 2013-Ohio-4142, ¶ 66, stating:

> Evid.R. 804(B)(3) provides that a statement against interest may be admitted under certain circumstances as an exception to the hearsay rule. But Evid.R. 804(B)(3) does not apply to statements made by a party to the action. 1993 Staff Note to Evid.R. 804(B)(3). A statement made by a defendant is considered an "admission," and is governed by Evid.R. 801(D)(2). An "admission" and a "statement against interest" reflect two distinct concepts and different rules of admissibility apply to each. See *Ferrebee v. Boggs*, 24 Ohio App.2d 18, 263 N.E.2d 574 (4th Dist. 1970). * * *

**{¶30}** Here, William's testimony that she heard Phillips admit she hit Williams's car was offered by the state against Phillips, a party to the action. Furthermore, the statement was Phillips's own statement made in an individual capacity. Accordingly, Phillips's statement was not hearsay, and despite Phillips's argument that the statement should not have been admitted because it was "unfairly prejudicial," the trial court did not abuse its discretion in admitting the statement as an admission by a party-opponent. The first assignment of error is therefore overruled.

B.        Manifest Weight of the Evidence

{¶31} In her second assignment of error, Phillips contends that her convictions are against the manifest weight of the evidence.

{¶32} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶33} Although we review credibility when considering a manifest weight challenge, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). This is because the trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. "'A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent

testimony.'"  *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 37, quoting

*State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38.  The jury may take

note of any inconsistencies and resolve them accordingly, believing all, part, or none of a

witness's testimony.  *State v. Bland*, 8th Dist. Cuyahoga No. 101631, 2015-Ohio-2388, ¶

16, citing *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21.

**{¶34}** Phillips contends that her convictions are against the manifest weight of the

evidence because either version of the events — Williams's version that Phillips

deliberately hit her car, or Phillips's version that she hit the Alero by mistake as she was

trying to get away from Williams and her companions — could plausibly be true.

Phillips argues that "there was no way for the jury to reliably determine what witness or

witnesses were lying or mistaken."  We disagree.

**{¶35}** Williams testified that Phillips followed her car in order to continue the fight

that had started at the bar.  She testified further that Phillips and the occupants of the

Optima taunted her and her companions as they chased her car and while they were

stopped at a red light.  She also testified that the force of the impact of Phillips's car

caused her head to hit the steering wheel and everyone to fly out of their seats.

**{¶36}** Duncan's testimony corroborated Williams's version of the events.  He

testified that he saw two cars traveling at a high rate of speed.  He testified further that

when he arrived on the scene, he saw the bumper of the silver car wedged under the rear

bumper of the Alero.  He testified further that the silver car was at an angle to the Alero,

which corroborated Williams's testimony that Phillips stopped her car at the red light in

the right lane slightly behind Williams's car. Similarly, Officer Douglas testified that he observed that Phillips's car had "fresh damage" to its hood and side consistent with Williams's description of how the accident occurred.

{¶37} Phillips's testimony was not corroborated in any way. Although she testified that three cars chased her when she left the bar, Duncan testified that he saw only two cars speeding by him and, later, stopped near the bridge. He made no mention of any other cars.

{¶38} Phillips's testimony that she hit the Alero because she was trying to escape when the five women got out of the Alero was similarly not corroborated and, in short, was not credible. First, Phillips's friend Scott testified that no one from the Alero ever got out of the car at the red light. Furthermore, it is not believable that Phillips would have driven away and left Scott, who testified she was outside the Optima at that time, to fight the five women on her own. And Officer Douglas testified that despite repeated questioning about what happened, Phillips said nothing about any alleged ambush by the women in the Alero. Finally, Phillips gave no explanation whatsoever regarding why she would later return to the scene of the alleged ambush to retrieve her license plate, even though the alleged aggressors were still present, if she had indeed fled to get away from them. On this record, we cannot conclude that the jury lost its way in resolving the conflicts in the evidence to find Phillips guilty of felonious assault.

{¶39} Nevertheless, Phillips contends that her convictions are against the manifest weight of the evidence because there was no evidence that she was aware there were five

people in the Alero before she hit it. Therefore, she contends there was no evidence demonstrating sufficient mens rea with respect to each of the named victims. Phillips's argument is without merit. Phillips knew there were five people in the Alero; indeed, she testified that five women got out of the Alero at the red light.

{¶40} This is not that exceptional case where the evidence weighs heavily against the conviction. Phillips's conviction on five counts of felonious assault is not against the manifest weight of the evidence, and the second assignment of error is overruled.

C.      Ineffective Assistance of Counsel

{¶41} In her third assignment of error, Phillips contends that her trial counsel was ineffective.

{¶42} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation, and that he was prejudiced by that performance. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Id.* at 689. Trial tactics and

strategies do not constitute a denial of effective assistance of counsel. *State v. Gooden*, 8th Dist. Cuyahoga No. 88174, 2007-Ohio-2371, ¶ 38, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

**{¶43}** Phillips first asserts that her counsel was ineffective because he did not object to Officer Douglas's "expert" testimony that the damage to her car was "fresh damage." Phillips contends that counsel should have objected because there was no evidence offered to support the officer's credentials as an expert on automobile damage.

**{¶44}** Our review of the trial transcript demonstrates that Douglas testified about the damage to Phillips's car based on his knowledge and experience as a police officer, and that he was not offering testimony as an expert in the field of automobile damage. A police officer may give lay opinion based upon his perception of evidence at the scene. *Drummond* at ¶ 222; Evid.R. 701. Counsel's failure to object was not deficient because Douglas's testimony was proper.

**{¶45}** Phillips next contends that counsel was ineffective for not objecting to Douglas's testimony about what he learned from interviewing Williams and other individuals at the scene. She contends that this testimony was inadmissible hearsay and that counsel should have objected to this testimony.

**{¶46}** Hearsay is "a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Out-of-court statements offered for reasons other than the truth are not hearsay. *State v. Freeman*, 8th Dist. Cuyahoga No. 85137,

2005-Ohio-3480, ¶ 40. Generally, statements offered to explain a police officer's underlying reasons for conduct while investigating a crime are not hearsay. *Freeman* at *id.*, citing *State v. Price*, 80 Ohio App.3d 108, 110, 608 N.E.2d 1088 (9th Dist.1992); *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980).

{¶47} Our review of the trial transcript demonstrates that Douglas's comments were made to explain the conduct of his investigation. He testified that when he arrived on the scene, he saw a female standing outside her car and, upon talking to her, learned that she had been in an accident. He explained that he then made a traffic stop of Phillips's car because while he was interviewing the occupants of Williams's car, they told him that the car that had hit them earlier was driving by. Douglas explained that after he stopped Phillips, he wanted to "find out exactly what's going on here," so he interviewed Phillips again because she denied being in an accident. Douglas's testimony explained how and why he was conducting his investigation at the scene. Accordingly, we find no error in admitting the testimony and, therefore, find that counsel was not ineffective for not objecting to it.

{¶48} Next, Phillips contends that trial counsel was ineffective because he did not file a witness list and did not properly prepare Scott to testify. Again, we find no ineffective assistance of counsel. The record reflects that defense counsel's failure to file a witness list did not prejudice Phillips because the trial court allowed the defense to put on all its witnesses.

{¶49} With respect to Scott's testimony, it is apparent that some aspects of her testimony were not helpful to Phillips. Nevertheless, that does not mean counsel did not interview her or properly prepare her for her testimony. No amount of preparation can guarantee what a witness will say on the witness stand. Moreover, some of Scott's testimony was consistent with Phillips's: Scott testified that several cars followed them from the bar and blocked them in at the red light, and that Phillips merely bumped the Alero when she was trying to get away. Thus, counsel's decision to put Scott on the stand may have been trial strategy, which we will not second-guess.

{¶50} Finally, Phillips asserts that counsel was ineffective for not objecting when the prosecutor in closing argument stated that Phillips and her friends were in "fight mode" that night. Phillips contends this statement was not supported by the evidence. Phillips asserts that in isolation, counsel's failure to object may not have been ineffective, but when combined with the other errors, counsel's representation fell below the standard for a competent criminal defense attorney. We disagree.

{¶51} The evidence reflects that Phillips and her friends were in a fight at the Stumble Inn bar that evening. The evidence further reflects that Phillips and her friends chased the Alero, and taunted the women in the car, yelling that they wanted to fight them. Furthermore, Williams testified that the women in her car and the women in Phillips's care were "fired up." Thus, although none of the witnesses used the words "fight mode," the evidence demonstrated that Phillips and her friends were indeed in "fight mode" that evening. Accordingly, even if the comments were objectionable in

some way, defense counsel may have decided as a matter of strategy not to object to the prosecutor's statements.   We will not second-guess trial strategy.

**{¶52}** Because we find no ineffective assistance of counsel, the third assignment of error is overruled.

**{¶53}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
MARY J. BOYLE, J., CONCUR