[Cite as *State v. Rhodes*, 2018-Ohio-1629.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106120**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RON RHODES**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-612388-A

**BEFORE:** Laster Mays, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 26, 2018

-i-

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 670218
Northfield, Ohio 44067


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Christopher D. Schroeder
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Ron Rhodes ("Rhodes") appeals his conviction and asks this court to reverse and remand to the trial court for a new trial. We affirm.

{¶2} Rhodes was found guilty of assault, a first-degree misdemeanor, in violation of R.C. 2903.13; kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(3); and domestic violence, a first-degree misdemeanor, in violation of R.C. 2919.25(A). The trial court sentenced Rhodes to three years imprisonment on the kidnapping count and time served on the misdemeanor counts. The trial court also imposed five years of mandatory postrelease control.

**I.     Facts**

{¶3} C.J., the victim, testified that on the evening of November 16, 2016, she went to get her hair done. While getting her hair done, she had a phone conversation with Rhodes, where

he expressed he was upset that C.J. did not previously inform him of her hair appointment. C.J. stated that Rhodes "seemed aggravated." (Tr. 153.) When C.J. returned home, Rhodes was not there, so she went to sleep. She was awakened sometime later by Rhodes who was angry and yelling. When C.J. asked Rhodes what was wrong, Rhodes grabbed C.J. by her shoulder, dragged her off the bed onto the floor, and began punching her on the legs, arms, and side. C.J. testified that Rhodes then grabbed a leather belt and began hitting her on her legs and arms. (Tr. 155.) C.J. stated that Rhodes told her, "B**ch, I'm gonna kill you. Think you slick." (Tr. 157.) Rhodes wrapped his hands around C.J.'s throat and began choking her. C.J. testified that she began to fade out but did not lose consciousness. (Tr. 158, 197.) Rhodes then digitally penetrated C.J.'s vagina. (Tr. 158.)

{¶4} C.J. testified that she attempted to bite Rhodes to get away, but Rhodes locked the bedroom door so she could not escape. (Tr. 158-159.) Rhodes then tried to stomp C.J.'s face with his boot, but she shielded her face with her hands. He choked C.J. again and told her, "You not about to see your kids, b**ch. You about to die." (Tr. 159.) According to C.J., Rhodes then got up, turned on the light, opened the bedroom door, and said, "B**ch, try to leave now. Try to leave now." (Tr. 160.) C.J. did not have any clothes on during the attack, grabbed a dress and ran out of the house. When C.J. got outside, she saw a woman on the street and asker her to give her a ride to the hospital. (Tr. 161.) The woman gave her a ride to South Pointe Hospital and C.J. was admitted. She had bruising on her neck, legs, thigh, and around her eye.

{¶5} While in the hospital, C.J. called the Cleveland Division of Police, Domestic Violence Unit. Detective Darren Reeves ("Det. Reeves") arrived at the hospital and spoke with C.J. Det. Reeves photographed C.J.'s injuries and had her complete a written statement. On

cross-examination, defense counsel raised the issue that C.J. did not indicate that Rhodes digitally raped her to the hospital staff and, therefore, a rape kit was not prepared.

{¶6} Initially Rhodes was charged with rape, felonious assault, kidnapping, and domestic violence. However, the jury found Rhodes not guilty of rape and guilty on the lesser included offense of assault. Rhodes has filed an appeal assigning two errors for our review:

> I. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that the appellant was guilty of kidnapping; and
>
> II. The appellant's convictions were against the weight of the evidence.

## II. Sufficient Evidence

### A. Standard of Review

{¶7} Accordingly,

> With respect to sufficiency of the evidence, "sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. *Black's Law Dictionary* 1433 (6 Ed.1990). *See also*, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L. Ed. 2d 652, 663 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979).

*State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.

### B. Law and Analysis

{¶8} In Rhodes's first assignment of error, he argues that the evidence was insufficient as a matter of law to convict him of kidnapping. Specifically, he contends that there is not any evidence to corroborate the victim's account of the event, and that he did not restrain C.J.'s liberty for any period of time. R.C. 2905.01(A)(3) defines kidnapping as,

No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:  To terrorize, or to inflict serious physical harm on the victim or another.

{¶9}  "We first note that proof of guilt may be made by real evidence, circumstantial evidence, and direct or testimonial evidence, or any combination of the three, and all three have equal probative value.  *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), *supra*."  *State v. Mallette*, 8th Dist. Cuyahoga No. 87984, 2007-Ohio-715, ¶ 27.

Corroborating evidence does not necessarily have to be in the form of eyewitness testimony. Corroborating evidence is that which supplements evidence that has already been given and which tends to strengthen or confirm it. *Lazovic v. State Auto Ins. Co.*, Cuyahoga  No. 72968, 1998 Ohio App. LEXIS 3149, (July 9, 1998) quoting *Black's Law Dictionary* 344 (6th Ed. 1990).  Corroborating evidence "is additional evidence, of a different character, to the same point." *Id*. The requirement set forth in *State v. Economo*, 76 Ohio St.3d 56, 1996-Ohio-426, 666 N.E.2d 225, is "slight circumstances or evidence which tends to support the victim's testimony."  This is an easily met burden.

*State v. Manolakas*, 8th Dist. Cuyahoga No. 86815, 2006-Ohio-4263, ¶ 11.

{¶10} Corroborating evidence is not necessary for a finding regarding the charges in this indictment.  The only crime that requires corroboration is sexual imposition under R.C. 2907.06(B).  *See Economo*, 76 Ohio St.3d 56, 58, 1996-Ohio-426, 666 N.E.2d 225 ("We are aware of no other sections of the current Ohio criminal code mandating corroboration of a victim's testimony as a prerequisite to conviction").

{¶11}  However, in this case there was testimony that Rhodes had locked the bedroom door, preventing C.J. from leaving, in order to terrorize and assault her.  The evidence shows that while C.J.'s liberty was restrained, Rhodes inflicted bodily injury upon her.  The resulting evidence was the bruising all over her body.  Additionally, C.J. was terrorized when she was

threatened that she would not see her children again and that she was "going to die." *See State v. Welch*, 8th Dist. Cuyahoga No. 95577, 2011-Ohio-3243, ¶ 11 (evidence sufficient to support the elements of rape and kidnapping where defendant locked the door to the room in which the sexual assault occurred). It is unconscionable to think that C.J. chose to remain in a room while she was being beaten. Therefore, we conclude that the evidence was sufficient to convict Rhodes for kidnapping.

**{¶12}** The appellant's first assignment of error is overruled.

### III.    Manifest Weight of the Evidence

#### A.    Standard of Review

**{¶13}** "'A manifest weight inquiry looks at whether the evidence was substantial enough for a jury to reasonably conclude that all of the elements of the alleged crime have been proved beyond a reasonable doubt. We sit 'as a thirteenth juror. *Thompkins*, 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).'" *State v. Newett*, 8th Dist. Cuyahoga No. 103518, 2016-Ohio-7605, ¶ 39.

#### B.    Law and Analysis

**{¶14}** In Rhodes's second assignment of error, he argues that all of his convictions were against the manifest weight of the evidence.

> We review the entire record, consider the credibility of the witnesses, weigh the evidence and all reasonable inferences, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81. "Weight is not a question of mathematics, but depends on its effect in inducing belief." *Black's Law Dictionary* 1594 (6th Ed.1990). *Thompkins* at 387. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Martin* at 175.

*Id.* at ¶ 40.

{¶15} The record is replete with evidence supporting Rhodes's convictions beyond a reasonable doubt. Rhodes submits that C.J. provided conflicting versions of events that occurred and that C.J.'s testimony is not credible or believable. The record does not indicate that C.J.'s account of the events were conflicting nor does Rhodes demonstrate or give examples of those inconsistencies.

> Although an appellate court reviews credibility when considering the manifest weight of the evidence, the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

*State v. Pridgett*, 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, ¶ 21.

{¶16} However even if there are inconsistencies in C.J. testimony, "[i]t is the province of the [factfinder] to determine where the truth probably lies from conflicting statements, not only of different witnesses, but by the same witness." *State v. Haynes*, 10th Dist. Franklin No. 03AP-1134, 2005-Ohio-256, ¶ 24, quoting *State v. Lakes*, 120 Ohio App. 213, 201 N.E.2d 809 (4th Dist.1964). "A conviction is not against the manifest weight of the evidence solely because the [factfinder] heard inconsistent testimony." *State v. Phillips*, 8th Dist. Cuyahoga No. 103325, 2017-Ohio-1284, ¶ 33, quoting *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387.

{¶17} The jury listened to all of the testimony. They were able to observe the witnesses' demeanor, gestures, and voice inflections and used these observations in weighing the credibility of C.J. *See State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, 963 N.E.2d 162, ¶ 11 (10th Dist.) ("The jury may take note of any inconsistencies and resolve them accordingly,

believing all, part, or none of a witness's testimony."). In looking at the record and all the evidence presented, we determine that the state met its burden of persuasion at trial.

**{¶18}** Rhodes's second assignment of error is overruled.

**{¶19}** Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR