[Cite as *State v. Cummings*, 2018-Ohio-4214.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106458**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RAVAUGHN CUMMINGS**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-619556-A

**BEFORE:** Laster Mays, J., Stewart, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** October 18, 2018

**ATTORNEYS FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street, Second Floor
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Jillian J. Snyder
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant, Ravaughn Cummings ("Cummings"), appeals his conviction and sentence. He asks this court to reverse and vacate his conviction. After a review of the record, we affirm the trial court's decision.

{¶2} Cummings was found guilty of one count of aggravated robbery, a first-degree felony, in violation of R.C. 2911.01(A)(1), with firearm specifications of one- and three-years pursuant to R.C. 2941.145(A). Cummings was sentenced to six years imprisonment on the aggravated robbery count, and three years imprisonment on the firearm specification, to be served consecutively, for a total of nine years imprisonment.

## I.    Facts

{¶3} On the morning of February 14, 2007, J.J., a 15-year-old boy, was walking to school in Maple Heights. J.J. left his house around 6:00 a.m., and as he continued to school, J.J. realized that he needed to go back home for something he had forgotten. J.J. took a shortcut home by cutting through a yard. He encountered Cummings, who asked him if he could "hold a few dollars." (Tr. 275.) J.J. told Cummings that he did not have any money, and Cummings asked him again. When J.J. did not give Cummings money, Cummings pulled out a gun and pointed it at J.J.'s chest. Cummings told J.J. to empty his pockets. J.J. emptied his pockets revealing that he only had a phone. Cummings took the phone from J.J., and as J.J. walked toward his home, Cummings threw the phone into the street and walked away. J.J. retrieved his phone from the street and called his mother. J.J. gave a description of Cummings to his mother, who then called 911.

{¶4} Maple Heights police responded to the reported robbery at approximately 6:07 a.m. Officer Michael Russo ("Officer Russo") was one of the officers that took the report. J.J. gave

Officer Russo a detailed description of Cummings, describing him as in his twenties, with a mustache, and wearing blue jogging pants, a red hoodie, and a blue windbreaker pullover. Officer Russo sent the description to the other officers in an effort to try to locate Cummings. Officers checked the area, but could not locate Cummings.

{¶5} At 6:37 a.m., two blocks from J.J.'s house, a 911 call was placed by Yolanda Russell ("Russell"), Cummings girlfriend. She called to request that the police remove Cummings from her home. Russell informed the 911 operator that Cummings had a gun. Officers, including Officer Russo, arrived at the home of Russell. Russell again requested that the officers remove Cummings from her home. The officers asked Cummings to leave the home, but gave him time to get dressed because of the cold temperature outside. Officer Russo observed Cummings, who was already wearing blue jogging pants, put on a red hoodie and then a blue windbreaker. Once fully dressed, Officer Russo realized that Cummings fit the description of the man that J.J. described as the person that robbed him.

{¶6} Officer Russo went back to the police station and prepared a photo lineup for J.J. to view. Officer Russo used a program called Ohio Law Enforcement Gateway ("OHLEG") to find photos for the lineup. OHLEG generated photos, taken at the Bureau of Motor Vehicles, based on height, weight, age, eye color, and hair color. Officer Russo searched for African-American men who were 5' 9", 200 pounds, brown hair, brown eyes, and were within two years of age of Cummings. Three of the five men in the lineup had facial hair.

{¶7} J.J. was called to the police station the same day as the robbery to review a photo array. Officer Russo told J.J. that the police had developed a suspect and wanted J.J. to look at a photo array to see if he recognized anyone. J.J. testified that he thought that the guy was in the lineup because he was under the impression that they had caught the person that robbed him. J.J.

looked at the photo lineup, given by a blind administrator, and recognized Cummings as the man who robbed him. At first J.J. stated that he was 50 percent sure, then after closing his eyes and "picturing it in his head," J.J. told the administrator that he was 100 percent sure. (Tr. 286.)

{¶8} At trial, Russell testified that she lied about Cummings having a gun in her 911 call because she thought it would make the police come faster. She also testified that Cummings never left the house and that they were arguing all night. Two children who were living in Russell's house also testified that the couple was arguing during the night, and Cummings did not leave the house. However, the two children also admitted that they did not see Cummings the entire time.

{¶9} At the end of trial, the jury found Cummings guilty, and he was sentenced to nine years imprisonment. He assigns three errors for our review:

I. The trial court deprived appellant of due process under federal and Ohio law by failing to suppress a photo array unduly prejudicial under the United States Constitution and Ohio law;

II. The state presented insufficient evidence of appellant's guilt of the underlying charge or firearm; and

III. The manifest weight of evidence did not support a conviction of appellant.

## II. Motion to Suppress

### A. Standard of Review

{¶10} "A motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Accordingly, we give deference to the trial judge's factual findings, but we review the application of law to fact de novo. *Id.*; *see also State v. Davis*, 8th Dist. Cuyahoga No. 83033, 2004-Ohio-1908; *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 59.

## B.    Law and Analysis

{¶11} In Cummings's first assignment of error, he argues that the trial court deprived him of due process under federal and Ohio law by failing to suppress a photo array unduly prejudicial under the United States Constitution and Ohio law.

> An identification derived from unnecessarily suggestive procedures, which have a likelihood of leading to a misidentification, violates a defendant's right to due process.  *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).   In determining the admissibility of challenged identification testimony, a reviewing court applies a two-prong test:    (1) did the defendant demonstrate that the identification procedure was unduly suggestive; and, if so, (2) whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character.  *State v. Harris*, 2d Dist. Montgomery No. 19796, 2004-Ohio-3570, ¶ 19, citing *State v. Wills*, 120 Ohio App.3d 320, 324, 697 N.E.2d 1072 (8th Dist.1997); *see also State v. Thompson*, 8th Dist. Cuyahoga No. 90606, 2009-Ohio-615, ¶ 32, citing *State v. Page*, 8th Dist. Cuyahoga No. 84341, 2005-Ohio-1493.    If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required.  *Wills* at 325.

*Id*. at ¶ 63.

{¶12} Cummings contends that Officer Russo's statement to J.J. about the police having a suspect was unnecessarily suggestive because, as a result of the statement, J.J. believed the robber was in the lineup.    The testimony was as follows:

Attorney:      Did he tell you they developed a suspect?

J.J.:                    Not for sure, but I remember about the photo, I was doing the photo.

Attorney:      But he talked to you before you went into the photo lineup.

J.J.                    Right.   Yes.   Yes.

Attorney:      Did you think they caught the guy when you got in there to do the photo lineup?

J.J.                    Yes. Yes. Yes.

Attorney:        And did you think that he was in the photo lineup?

J.J.:                    Yeah.

Attorney:        And did you think that you had to pick somebody in the lineup because they caught a suspect?

J.J.:                    To know what person that had, you know, had robbed me, yeah.

Attorney:        Did you feel like that Officer Russo asked you there because they caught the guy and put him in the lineup?

J.J.:                    Yes.

(Tr. 298.)

**{¶13}** Cummings cites *State v. Jones*, 8th Dist. Cuyahoga No. 85025, 2005-Ohio-2620, in support of his claim.    In *Jones,* the victim was told that the suspect was in the photo array.    *Id.* at ¶ 16.    In this instant case, Officer Russo never told J.J. that the suspect was in the photo lineup.    Instead, Officer Russo stated that "we had developed a suspect, and we wanted him to take a look at a photo lineup."    (Tr. 263.)    From J.J.'s testimony, he then assumed that the culprit was in the photo lineup.    Reviewing these facts together, we find that Officer Russo's statements to J.J. were suggestive in nature.    We must now turn to the second prong of the two-part test.    Nevertheless, even if we find that the identification procedure was unduly suggestive, it does not mean that the identification is unreliable.    "[W]e must determine whether the identification was reliable despite the suggestive procedure.    *Wills*, *supra*."    *Id*. at ¶ 18.

**{¶14}** We determine whether the identification was reliable using the *Biggers* standard.

To determine reliability, the United States Supreme Court instructs courts to consider the following factors:    "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation * * *."    *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).    The court must review these factors under the totality of the

circumstances. *Id*.

*State v. Johnstone*, 8th Dist. Cuyahoga No. 92885, 2010-Ohio-1854, ¶ 24.

**{¶15}** After being robbed at gunpoint, J.J. picked Cummings out of a photo lineup with 100 percent confidence. In his testimony, J.J, stated that as Cummings walked toward him, Cummings's hoodie was up and came over his eyebrow. J.J. remembered that the person that robbed him had a mustache and later testified that Cummings had a beard. J.J. was also able to give an exact description of what Cummings was wearing on the day of the robbery. Officer Russo observed Cummings wearing the same outfit J.J. described. The photo line-up was conducted the same day of the robbery; therefore, J.J.'s memory was fresh. J.J. closed his eyes to visualize Cummings before saying that he was 100 percent positive that Cummings was the person who robbed him. J.J. stated that he was not forced to pick anyone in the photo lineup. More importantly, J.J. stated that if the "robber" was not in the photo lineup he would not have picked him. Therefore, we find that there is nothing in the record to suggest that J.J.'s identification of Cummings was unreliable.

**{¶16}** Cummings also argues that the photo array itself was suggestive. He argues that two of the six men did not have facial hair; one man had a full beard; one man appeared to be over 30 years old; the appellant's photo was artificially larger than all of the others, making him more prominent; and the appellant was one of two people wearing a hoodie.

> Where the men depicted in the photo array with the defendant all appear relatively similar in age, features, skin tone, facial hair, dress, and photo background, the photo array is not impermissibly suggestive. *State v. Jacobs*, 7th Dist. Mahoning No. 99-CA-110, 2002-Ohio-5240, ¶ 18. Generally a photo array is not unduly suggestive due solely to different backgrounds. *See State v. Carter*, 2d Dist. Montgomery No. 21145, 2006-Ohio-2823, ¶ 33, citing *State v. Nelson*, 8th Dist. Cuyahoga No. 81558, 2003-Ohio-3219; *but see State v. Johnstone*, 8th Dist. Cuyahoga No. 92885, 2010-Ohio-1854 (lighter background color of defendant's picture contributed to flawed identification procedure.)

*Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, at ¶ 69.

**{¶17}** After reviewing the record, we find that the men appeared to be relatively similar in age, features, skin tone, facial hair, dress, and photo background. Cummings's picture was not artificially larger than the others. It cannot be determined that Cummings's picture was unduly suggestive. Therefore, Cummings's first assignment of error is overruled.

## III. Sufficiency of Evidence

### A. Standard of Review

**{¶18}** Accordingly,

[w]ith respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *Black's Law Dictionary* 1433 (6th Ed.1990). *See, also*, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.

### B. Law and Analysis

**{¶19}** In Cummings's second assignment of error, he contends that the state presented insufficient evidence of his guilt to the charges and firearm specifications. Cummings was convicted of one count aggravated robbery with

one- and three-year firearm specifications. R.C. 2911.01(A)(1) defines aggravated robbery as,

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> > (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

The firearm specification was added because Cummings committed the offense using a firearm.

**{¶20}** Cummings argues that because the identification was unreliable, there was not sufficient evidence to convict him of aggravated robbery. We have already determined that the identification was reliable. He also argues that because J.J. stated that the perpetrator had a mustache instead of a goatee, J.J.'s identification of him was unreliable. However in his testimony, J.J. stated that the perpetrator had a beard and mustache. He did not tell the police about the beard because he already recognized the guy from the photo lineup. During his testimony, J.J. rubbed his face. When questioned about this, J.J. stated that he remember that the perpetrator had a beard as well.

**{¶21}** Given J.J.'s testimony that Cummings pulled out a gun, placed the gun to J.J.'s chest, ordered him to empty his pockets, and took his phone; the reliable identification; the fact that Cummings was in the area where J.J. was robbed; Cummings's clothing matched the description J.J. gave to the police; and the 911 call that Russell made stating that Cummings had a gun, we find that there is sufficient evidence to convict Cummings of aggravated robbery.

**{¶22}** Cummings also contends that because the gun was never found or tested, there is no evidence that the gun was operable.

> "The case law interpreting this statute has evolved over the years. Initially, in *State v. Gaines*, 46 Ohio St.3d 65, 545 N.E.2d 68 (1989), the Ohio Supreme Court held that "prior to imposition of an additional term of three years' actual incarceration for possession of a firearm during the commission of a felony, the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense." *Id.*, syllabus.
>
> The [c]ourt then modified its ruling in *State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 [1990], when it clarified how the state could prove a firearm specification. Such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. (*State v. Gaines*, 46 Ohio St.3d 65, 545 N.E.2d 68 [1989], modified.) *Murphy*, syllabus.
>
> More recently, the [c]ourt added circumstantial evidence as a basis for proof: "A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, *which include any implicit threat made by the individual in control of the firearm*. (*State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 [1990], *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 [1991], and *State v. Dixon*, 71 Ohio St.3d 608, 646 N.E.2d 453 [1995], followed; R.C. 2923.11[B][1] and [2], construed and applied.)" *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph one of the syllabus, emphasis added.
>
> The courts have differed in interpreting how much circumstantial evidence is enough to prove the existence of an operable firearm in the commission of a crime. Numerous cases support a conviction if the defendant states he has a gun and will use it, even if no one sees the gun and the gun is never produced at trial and therefore cannot be tested to determine whether it is operable. *State v. Jeffers*, 143 Ohio App.3d 91, 757 N.E.2d 417 (2001); *State v. Haskins*, 6th Dist. Erie No. E-01-016, 2003-Ohio-70.
>
> Additionally, case law supports conviction when a defendant flashes what appears to be a gun, even if it is never proved to be a gun or to be operable. *State v. Dixon*, 71 Ohio St.3d 608, 646 N.E.2d 453 (1995); *State v. Nelson*, 2d Dist. Montgomery No. 14775, 1995 Ohio App. LEXIS 3367 (Aug. 18, 1995). This is so even if the offender never states that he will use the gun if the victim does not comply with his orders; "the implicit threat of brandishing a firearm so as to threaten a victim is sufficient to establish its operability under R.C. 2923.11(B)." *State v. McDade*,

11th Dist. Lake No. 97-L-059, 1998 Ohio App. LEXIS 4533, at *33 (Sept. 25, 1998).

*State v. Lee*, 8th Dist. Cuyahoga No. 105537, 2018-Ohio-1523, ¶ 28, quoting *State v. Watkins*, 8th Dist. Cuyahoga No. 84288, 2004-Ohio-6908, ¶ 13-17. We find that there is sufficient evidence regarding the gun specification charge where Cummings ordered J.J. to empty his pockets while placing the gun to J.J.'s chest. The implicit threat while brandishing the gun so as to threaten J.J. is sufficient to establish its operability.

**{¶23}** Cummings second assignment of error is overruled.

## IV. Manifest Weight of the Evidence

### A. Standard of Review

**{¶24}** "A manifest weight inquiry looks at whether the evidence was substantial enough for a jury to reasonably conclude that all of the elements of the alleged crime have been proved beyond a reasonable doubt. We sit 'as a thirteenth juror.'" *Thompkins*, 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *State v. Newett*, 8th Dist. Cuyahoga No. 103518, 2016-Ohio-7605, ¶ 39.

### B. Law and Analysis

**{¶25}** In Cummings's third assignment of error, he argues that the manifest weight of the evidence did not support a conviction.

> We review the entire record, consider the credibility of the witnesses, weigh the evidence and all reasonable inferences, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81. "Weight is not a question of mathematics, but depends on its effect in inducing belief." *Black's Law Dictionary* 1594 (6th Ed.1990). *Thompkins* at 387. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Martin* at 175.

*Newett* at ¶ 40.

{¶26} Cummings argues that Russell's testimony is proof that he was at her home all night and early morning of the date in question. Russell testified that she lied about Cummings having a gun so the police would come to her home quickly. The two minor children also testified that they heard Russell and Cummings fighting all night, but did admit they did not see him the entire time. Because Russell's and the minor children's testimony conflict with J.J.'s testimony, Cummings believes that this demonstrates that the weight of the evidence did not support his conviction. However,

> [a]lthough an appellate court reviews credibility when considering the manifest
> weight of the evidence, the credibility of witnesses and the weight of the testimony
> are primarily for the trier of fact. The trier of fact is best able to view the witnesses
> and observe their demeanor, gestures, and voice inflections, and use these
> observations in weighing the credibility of the proffered testimony. *State v. Kurtz*,
> 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26, quoting *State v. Wilson*, 113
> Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

*State v. Pridgett*, 8th Dist. Cuyahoga No. 101823, 2016-Ohio-687, ¶ 21.

{¶27} The jury, as the trier of fact, was able to view all of the witnesses. The jury determined that J.J.'s testimony was more credible.

> However, * * * "[i]t is the province of the [factfinder] to determine where the truth
> probably lies from conflicting statements, not only of different witnesses, but by
> the same witness." *State v. Haynes*, 10th Dist. Franklin No. 03AP-1134,
> 2005-Ohio-256, ¶ 24, quoting *State v. Lakes*, 120 Ohio App. 213, 201 N.E.2d 809
> (4th Dist.1964). "A conviction is not against the manifest weight of the evidence
> solely because the [factfinder] heard inconsistent testimony." *State v. Phillips*, 8th
> Dist. Cuyahoga No. 103325, 2017-Ohio-1284, ¶ 33, quoting *State v. Hill*, 8th Dist.
> Cuyahoga No. 99819, 2014-Ohio-387.

*Rhodes*, 8th Dist. Cuyahoga No. 106120, 2018-Ohio-1629, at ¶ 16.

{¶28} The jury listened to all of the testimony. They were able to observe the witnesses' demeanor, gestures, and voice inflections and used these observations in weighing the credibility of all the witnesses. *See State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, 963 N.E.2d 162, ¶ 11 (10th Dist.), quoting *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). ("The jury may take note of any inconsistencies and resolve them accordingly, 'believ[ing] all, part, or none of a witness's testimony.'"). In looking at the record and all the evidence presented, we determine that the state met its burden of persuasion at trial.

{¶29} Cummings's third assignment of error is overruled.

{¶30} Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MELODY J. STEWART, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR